UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROSALIND M. CROSS, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 4:23-cv-976-MTS |
| COLLEEN SHOGAN, *Archivist, National Archives and Records Administration*, | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Colleen Shogan's Motion to Enforce Settlement, Doc. [40], and Plaintiff's Response, Doc. [41]. For the reasons that follow, the Court will grant the motion, in part, and order the parties to comply with the terms of the settlement agreement reached during mediation on July 29, 2024.

I. BACKGROUND

Plaintiff brought this action pro se under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, alleging that she experienced unlawful retaliation after engaging in protected activity, namely, filing complaints with the Equal Employment Opportunity Commission ("EEO complaints"). Doc. [1]. On July 29, 2024, the parties participated in court-ordered mediation. Doc. [33]. During that session, the parties achieved a settlement, *id.*, and they recorded the material terms of that agreement in a signed writing, Doc. [40] ¶ 3; Doc. [37-1]. That writing reflects Plaintiff's agreement to a one-time $5,000 payment to resolve the case and states that she "will waive all claims arising out of, or related to, the allegations contained within this complaint and EEO Complaint #1809." *Compare* Doc. [41],

*with* Doc. [37-1]. The agreement also specifies that the settlement agreement "does not pertain to case 4:23-cv-1415-HEA which remains pending," Doc. [37-1], and acknowledges that a "full settlement agreement/release [will] follow." *Id.* In light of the agreement, the Court ordered the parties to file "a written settlement agreement, a stipulation of dismissal, a motion for leave to voluntarily dismiss, or a proposed consent judgment, signed by all parties and counsel." Doc. [35]; *see also* E.D. Mo. L.R. 605(c).

On August 20, 2024, counsel for Defendant sent Plaintiff a document entitled "Settlement Agreement and Release," which the parties "discussed at mediation." Doc. [40-2]. Plaintiff responded with misgivings about the document, and she specifically objected to language within the subsection effectuating her "voluntary release of all claims." *Compare id.*, *with* Doc. [37-2]. As originally drafted, the release covered "any and all" EEO complaints relating to Plaintiff's employment with the National Archives and Records Administration as well as "any court actions," Doc. [37-2] at 5–6, and made no specific reference to Plaintiff's additional federal-court action that the parties explicitly excluded from their agreement at mediation. *Id.* at 4–10.

Responding to Plaintiff's concerns, Defendant's counsel assured Plaintiff that the document contained standard language commonly found in similar settlement agreements. Doc. [40-3]. Counsel also agreed to amend the release and make it "more clear" that the agreement only affected "this particular EEO complaint/instant federal claim." *Id.* But Plaintiff was not assuaged. She replied that she was "not interested in a new, amended, or different agreement." *Id.* For her, the agreement reached at mediation "[was] binding, sufficient and [could] be submitted to [the Court] as is." *Id.* Moreover, "[a]t mediation, there

was never a mention of having to sign another document." *Id.*  Finally, Plaintiff instructed Defendant's counsel to submit the agreement that the parties signed at mediation. *Id.*

Defendant now moves to enforce the Settlement Agreement and asks this Court to order specific performance compelling Plaintiff to execute the most recent version of the Settlement Agreement and Release.  Doc. [40]; Doc. [41-1].  Defendant states that multiple revised versions of the release have been shared with Plaintiff, Doc. [40] at 5, and the most recent version of the release addresses Plaintiff's original concerns because it repeatedly acknowledges that the document pertains only to "the above captioned action" or "Cross v. Shogan– 4:23-cv-00976-MTS only," Doc. [41-1].  Additionally, it clearly states that "[t]his settlement does not include and does not affect the pending case of *Cross v. Shogan*, 4:23-cv-01415-HEA."  Defendant argues that Plaintiff should be ordered to execute this version of the Agreement because "a signed release of claims by Plaintiff is necessary for Defendant to execute its obligation under the Settlement Agreement." Doc. [40] at 5.

Plaintiff opposes the motion and asserts that she has never seen the version of the proposal that Defendant attached as Exhibit A.  Doc. [41].  She objects to certain clauses that, she argues, are materially different from the parties' original agreement at mediation because there is no carve out for her other pending federal-court action.[1]  Doc. [41] at 3-4.  She also asserts that, because the parties already signed an agreement during mediation, all that is needed to resolve this matter is a "simplified release agreement that only pertains to the case mentioned in the settlement agreement." *Id.*

---

[1] Plaintiff's objections seem to pertain to language that is in a prior version of the release and not the one that Defendant attaches to the current motion. *Compare* Doc. [37-2] at 6–8, *with* Doc. [40-1] at 3–6.

## II. DISCUSSION

"A district court has the inherent power to summarily enforce a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous." *Gatz v. Sw. Bank of Omaha*, 836 F.2d 1089, 1095 (8th Cir. 1988). "Basic principles of contract formation govern the existence and enforcement of [an] alleged settlement," *Chaganti & Assoc., P.C. v. Nowotny*, 470 F.3d 1215, 1221 (8th Cir. 2006), and the parties do not dispute that Missouri contract law governs here.[2] Under Missouri law, a valid settlement agreement requires "the essential terms of a contract: offer, acceptance, and consideration." *Grant v. Sears*, 379 S.W.3d 905, 915 (Mo. Ct. App. 2012). "A valid settlement agreement also requires a meeting of the minds and a mutual assent to the essential terms of the agreement." *Youngs v. Conley*, 505 S.W.3d 305, 313 (Mo. Ct. App. 2016). Additionally, "a settlement agreement 'may be considered valid and enforceable even if it contemplates that a release will be signed at a later time.'" *Matthes v. Wynkoop*, 435 S.W.3d 100, 107 (Mo. Ct. App. 2014) (quoting *B-Mall Co. v. Williamson*, 977 S.W.2d 74, 77 (Mo. Ct. App. 1998)).

In this case, the parties agree that they reached a binding agreement during their mediation, and there is a signed document memorializing the principal, essential terms of that agreement.[3] *Compare* Doc. [40] at ¶ 3, *with* Doc. [41] at 2. The essential terms are clear: in

---

[2] The Court of Appeals for the Eighth Circuit has "never determined whether federal or state law governs the enforcement of Title VII settlement agreements." *Harris v. Brownlee*, 477 F.3d 1043, 1047 n.2 (8th Cir. 2007). Instead, when the parties do not dispute the matter, the court has applied the law of the relevant state while leaving "the larger choice of law question for another day." *Sheng v. Starkey Labs., Inc.*, 117 F.3d 1081, 1083 n.1 (8th Cir. 1997) (applying Minnesota law where the parties assumed that Minnesota law controlled).

[3] Thus, there is not "a substantial factual dispute over the existence or terms of a settlement" such that an evidentiary hearing on this matter is required. *See Stewart v. M.D.F., Inc.*, 83 F.3d 247, 251 (8th Cir. 1996).

exchange for Defendant's one-time payment of $5,000, Plaintiff "will waive all claims arising out of, or related to the allegations contained within [the complaint in this action] and EEO complaint #1809," and Plaintiff's additional federal-court action, case number 4:23-cv-1415-HEA, will remain unaffected. Doc. [37-1]. The parties disagree, however, on what is necessary to *effectuate* their agreement. For Defendant, the agreement at mediation "expressly contemplated the signing of a Release at a later date as a principal element of the Settlement Agreement." Doc. [40] at 5; Doc. [37-1] (stating "[a] full settlement agreement/release to follow"). Thus, according to Defendant, Plaintiff must sign the release before it "can execute its obligations under the Settlement agreement," Doc. [41] at 5, and consequently, the parties are at an impasse because Plaintiff refuses to sign.[4]

This Court is clearly empowered to break such an impasse. An unsigned, still-pending release of claims does not disrupt the validity or the enforceability of a corresponding settlement agreement. *Matthes*, 435 S.W.3d at 107. And, where the terms of the applicable agreement are "clear and unambiguous," the Court has "inherent power to summarily enforce

---

[4] Defendant cites *Landau v. St. Louis Public Service Co.* to argue that the Court should order Plaintiff to sign the Settlement Agreement and Release attached to the instant motion. 273 S.W.2d 255 (Mo. banc 1954). There, the Missouri Supreme Court affirmed a trial court's order compelling plaintiff to execute a release after she agreed to settle her claims but subsequently reneged on that agreement. *Id.* at 260. The Court finds that *Landau* is distinguishable and declines to follow its example. Before ordering plaintiff to execute the release, the *Landau* court found that there was "a full and complete understanding between the parties that the case had been settled and that releases and a stipulation for dismissal would be signed by plaintiff." *Id.* at 257 (adopting the facts recited by the Court of Appeals); *Landau v. St. Louis Pub. Serv. Co.*, 267 S.W.2d 364, 366 (Mo. Ct. App. 1954) (reciting the facts). Here, although the mediation agreement states that a "full settlement/release [will] follow," Doc. [37-1], it is unclear that Plaintiff was explicitly told at mediation that Defendant's one-time payment was conditioned upon a signed release such that Plaintiff was required to sign additional documents before the settlement could proceed. Doc. [40-3] ("At mediation, there was never a mention of having to sign another document."); *cf. Nwachukwu v. St. Louis Univ.*, 114 F. App'x. 264, 266 (8th Cir. 2004) (per curiam) (affirming an order requiring plaintiff to execute a release agreement where the preliminary agreement at mediation "provided that she would . . . execute a release of all claims").

[the] settlement agreement." *Gatz*, 836 F.2d at 1095. The Court will therefore enforce the clear and unambiguous terms to which the parties have agreed.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Enforce the Settlement Agreement, Doc. [40] is **GRANTED** in part.

**IT IS FURTHER ORDERED** that, no later than **January 10, 2025**, Defendant shall make a one-time payment of $5,000 to Plaintiff in exchange for her waiver of all claims arising out of, or related to, the allegations within the complaint filed in this action and EEO Complaint #1809. This settlement does not affect Plaintiff's other pending case, numbered 4:23-cv-1415-HEA.

**IT IS FURTHER ORDERED** that Defendant shall file a Status Report notifying the Court when Plaintiff has received payment.

**IT IS FINALLY ORDERED** that Plaintiff shall file a motion seeking leave to dismiss this action with prejudice **no later than fourteen days following the Status Report described above**. Failure to do so will result in dismissal of this action with prejudice and without further notice.

Dated this 11th day of December 2024.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE